UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL NO. 87-56-DCR

EUGENE WILLIAMS GALL, JR.,                              PETITIONER

vs.

GENE SCROGGY, WARDEN,                                   RESPONDENT

REPORT & RECOMMENDATION

On October 6, 1978, Eugene Williams Gall, Jr. was convicted by the Commonwealth of Kentucky in Boone Circuit Court of the gruesome murder of a twelve year old girl and sentenced to death. Thirty years later, the ramifications of that long-ago conviction continue to vex both state and federal courts. The defendant's latest salvo in his continuing quest to vacate his original conviction is a "motion to enforce" a decision of the Sixth Circuit issued on October 30, 2000 which ordered this federal district court to grant the petitioner a writ of habeas corpus on the basis that the conviction was unconstitutional.

Pursuant to local practice, defendant's current motion has been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. *See* 28 U.S.C. §636(b). I now recommend that the limited additional relief sought by defendant be granted because it is required by this court's prior absolute grant of habeas corpus relief.

**I. Procedural History**

The unique procedural history of this case was summarized in this court's order of May 1, 2008 and is repeated here for the convenience of the court:

1

[A]fter exhausting his available state court remedies, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 in this court. Although his petition was initially denied, the Sixth Circuit reversed and remanded on October 30, 2000, on the basis that constitutional error had so infected the trial as to require a conditional grant of the writ. *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000). Concluding that double jeopardy prevented retrial, but concerned with evidence that Gall "would be extremely dangerous to his fellow citizens if released," the Sixth Circuit conditioned the grant of the habeas petition on permitting time for the state to conduct an involuntary hospitalization proceeding. *Id.* at 336.

On remand to this court, Gall moved for a judgment vacating his conviction. This court's judgment of August 15, 2001 did not include Gall's tendered language expressly vacating the underlying conviction, but instead granted the petition of writ of habeas corpus by ordering the release of the petitioner within ninety (90) days, conditioned on the retention of the petitioner for an additional 30 days should the Commonwealth "elect to initiate civil commitment proceedings against the petitioner." Ultimately, the Commonwealth chose not to proceed with involuntary hospitalization proceedings. Instead, Gall was released from custody in Kentucky pursuant to this court's August 15, 2001 order and extradited to Ohio to serve sentences for rape, attempted rape, and aggravated robbery convictions in that jurisdiction.

Gall again appealed this court's judgment to the Sixth Circuit, arguing that the August 15, 2001 order should have mandated an involuntary hospitalization proceeding. The Sixth Circuit disagreed and affirmed the judgment of this court, holding that the state was not required to provide Gall with an involuntary commitment proceeding. *Gall v. Scroggy*, 69 Fed. Appx. 251, 254 (6th Cir. 2003)(unpublished, text available on Westlaw).

Gall next returned to state court, filing a motion under Kentucky CR 60.02 which argued that his underlying judgment of conviction should be vacated in order to comply with the October 20, 2000 ruling of the Sixth Circuit which granted the writ of habeas corpus. The circuit court denied Gall's motion and the Kentucky Court of Appeals affirmed on the grounds that the August 15, 2001 judgment of this federal court demonstrated an intent not to vacate the underlying state conviction. The Kentucky Court of Appeals further noted that Gall's appeal of the August 15, 2001 order never raised the issue of whether the conviction should have been vacated, instead focusing solely on the involuntary commitment issue. The Kentucky Supreme Court denied discretionary review on March 12, 2008, whereupon Gall promptly filed a new motion in this court seeking an order vacating the 1978 conviction pursuant to the grant of the writ.

The current motion does not specifically refer to the statute or federal rule

on which it is based. Although a petition for writ of mandamus is one remedy which may be employed to enforce a judgment, petitioner instead relies on *Gentry v. Deuth*, 456 F.3d 687 (6th Cir. 2006), *cert. denied*, 2006 WL 3227209 (Dec. 11, 2006). In *Gentry*, the Sixth Circuit held that federal courts retain continuing jurisdiction to enforce conditional writs of habeas corpus granted pursuant to 28 U.S.C. §2254, including but not limited to the power "to nullify an unconstitutionally obtained state court conviction." *Id.* at 696. Therefore, petitioner relies upon *Gentry* to assert this court's continuing jurisdiction pursuant to 28 U.S.C. §2254 to enforce the conditional grant of the writ directed by the Sixth Circuit Court of Appeals on October 30, 2000.

In his current proceeding, Gall is ably represented by counsel from the Department of Public Advocacy in Frankfort, Kentucky.

Doc. 193.

### II. Analysis

### A. Jurisdiction/Venue

The Kentucky respondent first argues that: 1) this case is moot and the court lacks jurisdiction because Gall has been released by the Commonwealth of Kentucky; and 2) the petition should have been filed in Ohio where Gall is currently incarcerated. Neither argument is persuasive.

It is true that petitioner is no longer in the custody of Kentucky. However, the continuation of Warden Scroggy as the respondent stems from the assertion of this court's continuing jurisdiction under 28 U.S.C. §2254 and the fact that petitioner seeks an order enforcing the Sixth Circuit's judgment concerning a Kentucky conviction prior to his release from incarceration in Kentucky. Under Sixth Circuit case law and generally understood principles of habeas corpus, a court retains jurisdiction to enforce its own prior judgment. *See Gentry v. Deuth*, 456 F.3d 687, 692-693 (6th Cir. 2006)(rejecting argument that release of the person renders moot an underlying habeas proceeding challenging an unlawful conviction); *see*

*also Salem v. Yukens*, 2006 WL 3500629 (E.D. Mich. Dec. 6, 2006)(unpublished, text available on Westlaw). Similarly, jurisdiction over the original petition is not destroyed upon the subsequent transfer of a prisoner to another jurisdiction so long as jurisdiction was proper at the time the petition was filed. *See Bishop v. Med. Superintendent of the Ionia State Hosp.,* 377 F.2d 467, 468 (6th Cir. 1967).

### B. Procedural Default

The Kentucky respondent additionally argues that Gall has procedurally defaulted any claim to have his conviction expunged because "[e]ight years have passed since the Sixth Circuit's opinion that invalidated Gall's murder conviction." The respondent's argument relies primarily if not exclusively on the passage of time. Although the issue of procedural default is a relatively close one due to factors other than the passage of time alone, I conclude that Gall has adequately pursued his current claim.

The denial of Gall's petition for writ of habeas corpus was overturned by the Sixth Circuit on October 30, 2000. Following remand to this court, on August 15, 2001 the presiding district judge granted the writ of habeas corpus and ordered Gall's release. Because retrial on the same criminal charge was barred by double jeopardy, the grant of the writ of habeas corpus could have been absolute. However, following the Sixth Circuit's instructions, the judgment of the district court permitted the Commonwealth to retain custody of Gall for the limited purpose of initiating *civil* commitment proceedings.

Prior to entry of judgment on remand, Gall tendered an order that included language which stated in relevant part that "[p]etitioner's conviction for murder and sentence of death....are unconstitutional and are VACATED." In lieu of using the tendered order, the district

court fashioned its own order and entry of judgment as follows:

> Pursuant to the opinion and judgment of the United States Court of Appeals for the Sixth Circuit..., the petition for writ of habeas corpus under 28 U.S.C. 2254 regarding the petitioner's judgment of conviction for the murder of Lisa Jansen in the Circuit Court of Boone County, Kentucky is hereby GRANTED, and the Commonwealth of Kentucky shall discharge petitioner from custody under that judgment within ninety (90) days of the entry of judgment in this case.
>
> The petitioner's release from state custody under the judgment is subject to the condition that the Commonwealth of Kentucky may retain custody of petitioner for an additional 30 days hereafter if it elects to initiate civil commitment proceedings...within that time.

Doc. 169. When Kentucky failed to initiate civil commitment proceedings, Gall was released to Ohio to begin serving sentences on convictions in that jurisdiction.

Gall timely appealed the August 15, 2001 order of this court, arguing that Kentucky should have been required to conduct the referenced involuntary hospitalization proceeding. Notably, Gall did not at that time raise the issue of whether the underlying Kentucky conviction should have been vacated. The Sixth Circuit rejected Gall's argument concerning the sole issue raised, holding on June 13, 2003 that Kentucky was not required to conduct an involuntary hospitalization proceeding.

On May 18, 2004, Gall began to pursue additional relief in state court under CR 60.02(e) seeking the relief he now seeks in this court - an order vacating his underlying conviction in compliance with the grant of the writ of habeas corpus previously obtained. The state circuit court denied Gall's motion on August 23, 2005 and Gall appealed.

During the pendency of Gall's CR 60.02 proceedings in state court, a wholly separate case bearing procedural similarities to Gall's case was progressing through this federal court. In *Gentry v. Deuth*, 456 F.3d 687 (6th Cir. 2006), *cert. denied,* 127 S.Ct. 838 (2006), the petitioner

invoked the continuing jurisdiction of this federal court to order nullification of her Kentucky conviction following the grant of habeas relief. In *Gentry*, the Kentucky respondent (represented by the same counsel as in this case) argued that the federal court lacked jurisdiction and that Gentry should instead file a CR 60.02 motion in state court - the precise procedural route contemporaneously pursued by Gall.[1] On July 31, 2006 -while Gall's CR 60.02 proceeding was still pending before the Kentucky Court of Appeals- the Sixth Circuit Court of Appeals issued its opinion in *Gentry*, holding that a petitioner who had been granted habeas relief could invoke the continuing jurisdiction of the federal court that had granted relief in order to obtain the additional implied relief of nullification of his state court conviction.

     Three factors preclude a finding of procedural default on the facts of this case notwithstanding the passage of eight years following the Sixth Circuit's opinion: 1) the lack of state or federal law concerning the procedure to be followed to nullify or expunge a state court conviction following a federal grant of habeas relief; 2) the timing of the Sixth Circuit's decision in *Gentry* in 2006 during the pendency of Gall's state court proceeding; and 3) petitioner's continual pursuit of a state court remedy followed by a prompt post-*Gentry* pursuit of a remedy in this court. This is not a case where the petitioner sat on his hands. After the Kentucky Supreme Court denied discretionary review on March 12, 2008, petitioner's counsel filed the instant motion just one month later.

     The lone fact in favor of procedural default is that when Gall first appealed this court's August 15, 2001 judgment, he raised only the issue of the failure of Kentucky to mandate

---

[1] Ironically, Gentry's counsel also represented Gall, but in Gentry argued (with ultimate success) that the federal court retained continuing jurisdiction to expunge the conviction because such relief was implied in an order granting habeas relief.

involuntary commitment proceedings. In theory Gall could have challenged this court's failure to include his tendered language "vacating" the underlying conviction at the time, but did not. The Kentucky Court of Appeals emphasized the point in denying relief: "Gall's subsequent appeal of that district court order never raised this issue [the district court's failure to adopt his language vacating the conviction], instead focusing exclusively on whether the involuntary hospitalization proceeding was mandatory." *Gall v. Commonwealth,* 2007 WL 1575303 at *3 (Ky. Ct. App. 2007)(unpublished, text available on Westlaw).

The Kentucky court's emphasis of this point ignores several salient facts. First, as explained below neither *Gentry* nor any other case has ever held that a federal court should *vacate* a state court conviction when granting relief under 28 U.S.C. §2254, as opposed to "nullifying" a conviction. Therefore, Gall would have had no basis to appeal the court's failure to adopt his tendered language "vacating" his state court conviction.

In addition, in 2001 when Gall appealed the order granting habeas relief, it was not clear that this federal court would be required to expressly nullify the conviction. Given Gall's release from state custody based upon a finding that the underlying conviction was unconstitutional, it was arguably reasonable for Gall to assume that nullification was *implied* (as later held by *Gentry*) and that the conviction would be set aside by the state without additional action on his part. At most, Gall might reasonably have believed that he would be required to pursue expungement through a state court proceeding. When it became clear that the Kentucky conviction would remained unaltered and that collateral consequences would continue to flow from that conviction, Gall sought relief in the state court.

*Gentry* was decided in July 2006 while Gall's appeal of the denial of relief by the state

court was still pending. In *Gentry*, the Sixth Circuit affirmed the relief sought by Gall in the case *sub judice* - an order enforcing previously granted habeas relief through nullification of the underlying conviction, to avoid the imposition of collateral consequences upon the (released) prisoner-petitioner by the Commonwealth of Kentucky. Prior to *Gentry*, no case law illuminated the course of remedy to be pursued where a petitioner had been awarded habeas relief and released from imprisonment, but remained subject to collateral consequences due to a state's decision to impose them on the basis of an unconstitutional conviction that remained "on the books." Thus, although a petitioner seeking nullification of his conviction after *Gentry* might be faulted for first pursuing a remedy in state court, on the facts of this case I can find no procedural default.

No doubt the dearth in case law prior to *Gentry* regarding the correct procedural remedy has much to do with the rarity of the issue, since the writ of habeas corpus is seldom granted. When it is granted, typically the grant is a conditional one that permits re-trial within a reasonable amount of time. Only if a state fails to meet the specified conditions does the writ become absolute and require release of the unconstitutionally convicted prisoner.

**C. Appropriate Relief: Nullification, Expungement, Vacatur and Reversal**

Having determined jurisdiction and venue are proper, and that no procedural default bars the requested relief, I turn now to the merits of petitioner's motion. Gall seeks an order "finding the October 6, 1978 judgment of the Boone Circuit Court to be void, and directing that it be *vacated*." Doc. #185 (emphasis added). Even post-Gentry, this court cannot order a state court to "vacate" a state court conviction. Although the distinctions may seem to reflect semantics

more than practical effects, controlling case law distinguishes between the nullification[2] and/or expungement[3] of a state court conviction by a federal court and the vacatur[4] or reversal[5] of such a conviction. In short, nullification (and corresponding expungement) is permitted; reversal and vacatur are not.

The distinction is one that the respondent acknowledges in this proceeding, but one that the Kentucky court failed to draw. In denying relief under *Gentry*, the Kentucky Court of Appeals found significant the fact that this federal court chose not to adopt language tendered by Gall that "vacated" the conviction.

> As *Gentry* makes clear, the federal district court in Gall's case undoubtedly had the authority to order his conviction *vacated*. Furthermore, collateral consequences are presumed to flow from a criminal conviction and need not be pleaded with specificity.
>
> [A]lthough the federal district court undoubtedly had the jurisdiction to order Gall's conviction *vacated*, the record indicates that it chose not to do so. As we have already noted, Gall submitted a proposed order that included a provision *vacating* his conviction. The federal district court rejected the wording of Gall's order and declined to include the provision in its judgment. Gall's subsequent appeal of that district court order never raised this issue, instead focusing exclusively on whether the involuntary hospitalization proceeding was mandatory.

*Gall*, 2007 WL 1575303 at *3 (emphasis added).

However, *Gentry* did not hold that a federal court has the power to *vacate* a state court

---

[2] "The act of making something void" or "The state or condition of being void." Black's Law Dictionary (8th ed. 2004).

[3] "The removal of a conviction...from a person's criminal record." Black's Law Dictionary (8th ed. 2004).

[4] "The act of annulling or setting aside" or "[a] rule or order by which a proceeding is vacated." Black's Law Dictionary (8th ed. 2004).

[5] "An appellate court's overturning of a lower court's decision." Black's Law Dictionary (8th ed. 2004).

conviction. Rather, *Gentry* upheld the longstanding principle that when habeas relief is granted by a federal court, "the state court judgment *is neither reversed nor vacated*" but instead "the prisoner is released and the state court judgment authoritatively declared void." *Id.* at 697 (quoting *Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273, 277 (4th Cir. 1977))(emphasis added). Only the United States Supreme Court has the authority to *reverse* a state court conviction on direct appeal. *See Smith v. Spina*, 477 F.2d 1140, 1147-48 (3d Cir. 1973).

*Gentry* made clear that habeas relief implies *nullification* of an unconstitutional conviction rather than reversal. Therefore, *Gentry* reasoned that a lower federal court may later make explicit what is implicit in a grant of habeas relief, and order a state court to expunge a nullified conviction. As explained in this passage from *Gentry*:

> [T]he law is absolutely clear that the writ releases the successful petitioner from the state's custody, and, as we have discussed above, such release includes relief from the conviction's collateral consequences when it was the conviction itself that was found to be unconstitutional. As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction. *See Satterlee v. Wolfenbarger*, 453 F.3d at 370 ("It appears that we have never expressly addressed whether habeas courts have the power to order the expungement of the record of a conviction. We conclude that they do."); *Ward v. Wolfenbarger*, 340 F. Supp.2d 773, 776 (E.D. Mich. 2004)("A federal district court has the authority, in a habeas corpus proceeding, to order the expungement of a habeas petitioner's criminal records against all persons who maintain custody of such records." (Citations and internal quotation marks omitted). Put another way, a state acts *ultra vires* when it obtains a criminal conviction in violation of the United States Constitution, and *ultra vires* acts bear no legitimate force in a government under the law. A public act without legitimate force is indistinct under the law from an act that never was, or an act that has been voided. Therefore, we hold that the district court acted within its constitutional authority when it nullified the petitioner's unlawful criminal conviction.
>
> In so holding, however, we note that the fact that the writ *nullifies* the criminal conviction does not necessarily *reverse* that conviction, for the writ does

> not itself generally preclude the Commonwealth from retrying the petitioner if it can otherwise do so lawfully. Nullification is thus akin to a non-prejudicial dismissal. *See Rimmer v. Fayetteville Police Dept.*, 567 F.2d 273, 277 (4th Cir. 1977)("While the state court judgment is neither reversed nor vacated, the prisoner is released and the state court judgment authoritatively declared void. Thereafter, the state court judgment should have no preclusive effect").

*Id.* at 696-697. Of course in this case, the Commonwealth was precluded by double jeopardy from retrying Gall on murder charges, so that the issuance of the writ amounted to a nullification which was akin to a dismissal with prejudice.

In *Gentry*, the Sixth Circuit also offered guidance on *when* a federal court should issue an order explicitly nullifying the state court conviction. There, the petitioner was released from imprisonment because she completed her sentence during the pendency of her habeas proceeding. Following her release, the federal district court granted the writ of habeas corpus, conditioned upon the Commonwealth's ability to conduct a new trial. The Commonwealth failed to grant a new trial within the allotted time. "As there was no need to release Gentry from incarceration, the only action required was to expunge Gentry's record of her unconstitutional felony conviction. The Commonwealth took no such action." *Id.* at 691. Only some time after the Commonwealth failed to expunge the record did Gentry file a "motion to enforce" the prior grant of habeas relief in federal court. The Sixth Circuit clearly approved of the district court's grant of additional relief at this later time. "As it took action only after the Commonwealth had decided, by its inaction, not to provide the petitioner with appropriate relief...the district court did not abuse its discretion by nullifying the Commonwealth's unconstitutional conviction." *Id.* at 697.

The Sixth Circuit rejected the Commonwealth's position in *Gentry* that a successful habeas petitioner who has been released by a federal court should seek further relief

(expungement) in state court:

> Successful habeas petitioners are entitled to the appropriate benefit of the writ, and we cannot require them to exhaust their claims anew in order to receive that benefit. To mandate that a petitioner who has obtained a writ of habeas corpus with respect to her unconstitutional conviction independently challenge the attempted imposition of collateral consequences of her unconstitutional conviction in state judiciaries, either *in toto* or *seriatim,* would, at a minimum, entail a uselessly formal acknowledgment of the states' sovereignty, *for states could not constitutionally enforce those collateral consequences.* Indeed, the Commonwealth itself implicitly acknowledges this problem in that it failed to raise any merits defense of its potential imposition of criminal collateral consequences against Gentry. Even more perniciously, under the Commonwealth's proposal, a less ethical state might find itself able in practice to impose collateral consequences of unlawful convictions when successful habeas petitioners find the task of challenging the attempted imposition of those consequences too onerous or intimidating. But a government under the law simply could not long remain under the law by acting in such a manner. Therefore, we hold that the petitioner is not required to exhaust anew her challenge to the collateral consequences of her unconstitutional conviction.

Id. at 696 (emphasis added).

Guided by *Gentry*, I recommend that this court now enter an order nullifying and directing expungement of the underlying 1978 conviction. In this case, the grant of the writ was nearly unconditional. Retrial on the original murder charges was not permitted under principles of double jeopardy, but the Commonwealth was permitted to maintain custody in order to institute civil commitment proceedings within a defined period of time. When that lone condition did not occur, the writ was automatically converted to an absolute grant. *See Gentry* at 691. After Gall's release, like in *Gentry*, the only action required was to expunge Gall's record of his unconstitutional felony conviction. The Commonwealth took no such action. An order by this court nullifying that conviction pursuant to the previous grant of the writ of habeas corpus will correct any mistaken assumption by the Commonwealth that it may continue to impose collateral consequences arising out of the unconstitutional 1978 conviction.

Although I have concluded that this court should nullify and order the Commonwealth to expunge Gall's conviction under controlling federal law, petitioner Gall asserts that the Commonwealth of Kentucky does not recognize a difference between "vacating" a conviction and "nullifying" it. Petitioner asks for vacatur under Ky.R.Civ.P. 60.02(e), which provides that upon motion a court may relieve a party from its final judgment if that judgment "is void, or has been satisfied, released, or discharged, or the prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The language of Rule 60.02(e) does not support petitioner's claim that there is no distinction between vacatur and nullification, but rather, permits the same relief to be obtained under state law whether a judgment has been rendered void, reversed, vacated, or satisfied. Nullification renders a conviction void. Because *Gentry* and other federal case law clearly supports only nullification and expungement, that is the relief that will be recommended. *See generally Satterlee v. Wolfenbarger*, 453 F.3d at 370 (affirming order of expungement following state's failure to comply with conditional writ); *Goldy v. Tierney*, 548 F. Supp.2d 422 (E.D. Mich. 2008)(citing *Gentry* and holding expungement required where prisoner previously released); *Eddleman v. McKee*, 2008 WL 186358 (E.D. Mich. Jan 22, 2008)(same, text available on Westlaw).

**D. "Broader Issues of Justice"**

Citing "broader issues of justice" and stating that the evidence "fully supported" a conviction for manslaughter, the Kentucky Court of Appeals declined to go further than the express terms of the August 15, 2001 order directing Gall's release. Relying on these same

"issues of justice," the respondent repeatedly focuses this court's attention on the gruesome nature of this brutal crime, which involved the kidnaping, rape and murder of an innocent twelve year old girl on her way to school. Referencing Ohio records, the respondent states that Gall currently is serving a life sentence in Ohio for aggravated murder, rape (4 counts), attempted rape, kidnaping (2 counts), aggravated robbery, and armed robbery. As noted by the respondent, even the Sixth Circuit Court of Appeals, when granting habeas corpus relief,[6] made clear that the court had no doubt that Gall had raped and killed Lisa Jansen.

> There is little doubt Gall committed the acts in question....
> 
> This is indeed a tragic case. The primary tragedy is that a young girl's life was taken in the most cruel and grisly fashion. It is also evident that Eugene Gall was the man who cut her life short.

*See id.* 231 F.3d at 277. Later in the opinion, the Sixth Circuit expressed agreement that "the Commonwealth's circumstantial evidence against Gall was 'overwhelming.'" *Id.* at 281. The Sixth Circuit granted the petition for habeas relief primarily because the prosecution failed to prove an essential element of the crime for which Gall was convicted. The Sixth Circuit went on to comment:

> Without that element proved, Gall's conviction would have been for manslaughter pursuant to Ky.Rev.Stat. Ann. § 507.030(1)(b), which carried a maximum jail term of twenty years - a length of time he has already served.
> Nonetheless, in looking at the trial record, we think that the overwhelming and undisputed evidence of Drs. Chutkow and Toppen was that Gall was not sane at the time he committed the acts in question. Moreover, the evidence clearly showed that Gall's psychotic condition is permanent, and that he would be extremely dangerous to his fellow citizens if released. . ..
> 
> With this overwhelming showing of Galls's severe mental illness and his high

---

[6] Ironically, the respondent mistakenly describes the Sixth Circuit's opinion as "*reversing* Gall's murder conviction." Doc. 194 at 12.

14

>   potential for future dangerousness, we condition the grant of Gall's habeas petition on the state's granting him an involuntary hospitalization proceeding, just as he would have been provided if he had been found insane under [the statute requiring such a proceeding for defendants who are acquitted by reason of insanity].

*Id.* at 335-336.

The respondent argues that "justice does not require nullification of Gall's conviction given the circumstances of his obvious guilt and incarceration on other charges [in Ohio]." Because the Sixth Circuit had "no doubt" that Gall committed the crimes in question and referenced the possibility that Gall might have been convicted of manslaughter, the respondent contends that the imposition of collateral consequences from the otherwise unconstitutional conviction is "just." The respondent makes several somewhat inconsistent arguments: 1) petitioner deserves the imposition of collateral consequences; 2) petitioner fails to show the existence of collateral consequences; and 3) petitioner has so many valid convictions that whatever additional collateral consequences exist from the unconstitutional conviction add nothing to those legitimately imposed from valid convictions.

The respondent's first argument is anathema to the issuance of the Great Writ. The Commonwealth could have initiated re-trial on a manslaughter charge but chose not to do so for the obvious practical reason that Gall had already served more than the term of imprisonment that could be imposed for such a conviction.[7] Regardless of its reasons, the Commonwealth can no longer rely on the unconstitutional conviction in order to impose collateral consequences. "[S]tates could not constitutionally enforce ...collateral consequences" when a petitioner has

---

[7]Contrary to the Commonwealth's position, it is not a foregone conclusion (and the Sixth Circuit did not hold) that Gall would have been convicted of the lesser offense, given evidence that brought his sanity into question.

obtained a writ of habeas corpus nullifying an unconstitutional conviction. *Gentry,* 456 F.3d at 696.

The respondent's second argument - that Gall has failed to adequately specify the collateral consequences imposed by the existence of the conviction - likewise was rejected in *Gentry* as well as by the Kentucky Court of Appeals in its opinion.

> [T]he law does not require a habeas petitioner to prove by a preponderance of the evidence that she may face collateral consequences of her unconstitutional felony conviction, for the disabilities consequent to a felony conviction are legion, and patently obvious in many cases. Indeed, as we have already noted, the Supreme Court has acknowledged that it has allowed federal courts to presume the existence of collateral consequences "in recent decades." Moreover, ...petitioner has pointed to Kentucky statutes that, on their face and as a matter of law, strip her, as a felon, of certain rights and privileges, including, *inter alia*, the right to vote and certain driving privileges. ...There are also well-known collateral consequences of a felony conviction under federal law of which we take judicial notice....

*Id.* at 694-695 (citations omitted); *see also Gall v. Commonwealth*, 2007 WL 1575303 at *3 ("collateral consequences are presumed to flow from a criminal conviction and need not be pleaded with specificity"). The Sixth Circuit previously held that even following Gall's release from Kentucky's custody, "collateral consequences still exist, and ...a case or controversy exists with respect to whether this court's earlier opinion and judgment were fulfilled." *Gall v. Scroggy*, 69 Fed. Appx. 251, 253, 2003 WL 2139880 (6th Cir. 2003). Finally, Gall has alleged that he suffers or will suffer from specific collateral consequences in Ohio resulting from his unlawful Kentucky conviction, including improper considerations of his record when determining eligibility for parole, and his current and future treatment/placement in the Ohio system. *Compare Ward v. Wolfenbarger*, 340 F. Supp.2d 773, 776 (E.D. Mich. 2004)(ordering expungement of criminal records of constitutionally invalid convictions despite expiration of

sentence, where convictions could be considered on parole for unrelated conviction).

The respondent's third argument -that the imposition of collateral consequences from the unconstitutional conviction is redundant to those arising out of Gall's remaining convictions - also fails to persuade. Certainly, a possibility exists that relief from collateral consequences arising out of the nullified murder conviction will have no real or tangible effect on Gall due to the existence of other legitimate convictions.[8] However, the United States Supreme Court has rejected the argument that this pragmatic approach should be used to deny relief. *See Sibron v. New York*, 392 U.S. 40, 56, 88 S.Ct. 1889, 1899 (1968)(finding "no relevance in the fact that Sibron is a multiple offender" based in part upon the inability to predict whether other convictions could be set aside in the future). Although *Sibron* involved a direct appeal, appellate and district courts in four other Circuits have applied its reasoning to the habeas context, at least when resolving issues of mootness as opposed to the "in custody" requirement. *See e.g., Murray v. Wainwright*, 450 F.2d 465, 468 (5th Cir. 1971)(multiple offender status irrelevant); *Harrison v. Indiana*, 597 F.2d 115, 118 (7th Cir. 1979)(same); *Valez v. People of State of New York*, 941 F. Supp. 300, 308-309 (E.D.N.Y. 1996)(same); *see also Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995)(adhering to 9th Circuit precedent requiring presumption of collateral consequences, but criticizing the possibility of a "cheapen[ing]" of the writ).

In a split decision, only the Eleventh Circuit in *Malloy v. Purvis*, 681 F.2d 736 11th

---

[8] That said, this court cannot help but express some chagrin at the enormity of resources marshaled by the Commonwealth in opposition to petitioner's ongoing quest to have his unconstitutional conviction declared to be void. If no collateral consequences exist, and/or that any such consequences are redundant given the existence of other valid convictions, there would be little reason to continue the fight against the relief sought herein.

Circuit 1982) appears to have taken a different approach. In that case, the majority reasoned that where a petitioner's multiple offender status has caused the forfeiture of civil liberties and the petitioner concedes that he cannot point to any actual harms arising from the challenged conviction, *Sibron* does not require the state to prove the absence of additional collateral consequences and the case is moot.

> We interpret *Sibron* simply to mean that the state must show that no possibilities exist for the imposition of collateral legal consequences on the basis of the challenged conviction. Because all the civil liberties cited by Malloy were previously forfeited, the state had nothing to prove.

*Id.* at 739; *but see* Wisdom, J., *id.* at 740 ("I read *Sibron*...as holding that a defendant's prior convictions are irrelevant to the question of collateral consequences)(specially concurring).

The parties have not cited and this court has not located any Sixth Circuit case law which addresses the issue of whether a petitioner's multiple offender status can render moot a motion to enforce the absolute grant of a writ of habeas corpus. I conclude based upon *Sibron* and the cited decisions from the Fifth, Seventh, Ninth and the Second Circuits that the Sixth Circuit would hold that a petitioner's multiple offender status does not render such a motion moot. In the alternative, I find the Eleventh Circuit's approach in *Malloy* to be distinguishable given that the petitioner here has specifically pleaded collateral consequences linked to this particular conviction, and that the Sixth Circuit has previously held in this case that collateral consequences exist.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** petitioner's motion to enforce the judgment of the Sixth Circuit and this court's previous grant of the writ of habeas corpus [Doc. 185] be **granted**, and that the district court enter an order forthwith **nullifying** the

unconstitutional 1978 conviction and requiring the Commonwealth of Kentucky to expunge the same conviction from its records.

**OBJECTION**S to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within ten (10) days after being served with a copy. Fed. R. Civ. P 72(b).

This 15th day of October, 2008.

Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge