UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| EUGENE WILLIAMS GALL, JR., | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2: 87-56-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GENE SCROGGY, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Petitioner Eugene Gall's motion to enforce the Sixth Circuit's October 30, 2000 decision, which directed this Court to grant Gall's writ of habeas corpus on the basis that his 1978 Kentucky murder conviction was unconstitutional.[1]  [Record No. 185]  Consistent with local practice, the matter was referred to United States Magistrate Judge J. Gregory Wehrman ("Magistrate") for consideration pursuant to 28 U.S.C. § 636(b)(1)(B).[2]  The Magistrate Judge filed his Report and Recommendation on October 15, 2008.  [Record No. 196]  Based on his review of the record and the applicable law, the Magistrate Judge recommended that this Court grant Gall's motion.  [Record No. 196, p.18–19]

_____

[1]      *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000).

[2]      On April 22, 2008, United States Senior District Judge William O. Bertelsman recused himself from further participation in the case.  The matter was reassigned to the undersigned on the same date. [Record No. 186]

The Kentucky Attorney General's Office filed objections to the Report and Recommendation on November 3, 2008.  [Record No. 199]  Gall's response was filed on December 1, 2008.  [Record No. 202]  Having reviewed the record and relevant law *de novo*, the Court will adopt the Magistrate Judge's recommendation.  As a result, the Court's ruling will nullify Gall's 1978 Kentucky murder conviction and direct that the conviction be expunged from his record.

## I.       BACKGROUND

On September 30, 1978, Gall was convicted in a Kentucky state court of murdering Lisa Jansen while engaged in the commission of rape.  After finding no mitigating circumstances in the punishment phase, the jury recommended the death penalty.  The state court adopted this recommendation and sentenced Gall to death.  *See Gall v. Parker*, 231 F.3d 265, 278 (6th Cir. 2000).

After exhausting all state court remedies,[3] this Court denied Gall's petition for habeas corpus.  On appeal, the Sixth Circuit reversed this Court's holding and held that pervasive error at trial led to an unconstitutional conviction, and that double jeopardy prevented Kentucky from retrying Gall for Jansen's murder.  The matter was remanded to this Court with instructions to grant Gall's habeas petition.  However, concerned that Gall "would be extremely dangerous to his fellow citizens if released," the Sixth Circuit instructed this Court to condition the grant of the habeas corpus on permitting time for Kentucky to conduct an involuntary hospitalization proceeding.  *Id.* at 278, 335–36; [Record No. 196, p. 2]

---

[3]      Gall's conviction was upheld by the Supreme Court of Kentucky, *Gall v. Commonwealth*, 607 S.W.2d 97 (Ky. 1980), *cert denied*, 450 U.S. 989 (1981), and subsequent state post-conviction relief was denied.  *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985).

The Report and Recommendation lays out the subsequent chronology of events leading up to the present motion:

> On remand to this court, Gall moved for a judgment vacating his conviction. This court's judgment of August 15, 2001 did not include Gall's tendered language expressly vacating the underlying conviction, but instead granted the petition of writ of habeas corpus by ordering the release of the petition within ninety (90) days, conditioned on the retention of the petitioner for an additional 30 days should the Commonwealth "elect to initiate civil commitment proceedings against the petitioner." Ultimately, the Commonwealth chose not to proceed with involuntary hospitalization proceedings. Instead, Gall was released from custody in Kentucky pursuant to this Court's April 15, 2001 order and extradited to Ohio to serve sentences for rape, attempted rape, and aggravated robbery convictions in that jurisdiction.
>
> Gall again appealed this court's judgment to the Sixth Circuit, arguing that the August 15, 2001 order should have mandated an involuntary hospitalization proceeding. The Sixth Circuit disagreed and affirmed the judgment of the court, holding that the state was not required to provide Gall with an involuntary commitment proceeding. *Gall v. Scroggy*, 69 Fed. Appx. 251, 254 (6th Cir. 2003).
>
> Gall next returned to state court, filing a motion under Kentucky CR 60.02 which argued that his underlying judgment of conviction should be vacated in order to comply with the October [30], 2000 ruling of the Sixth Circuit which granted the writ of habeas corpus. The circuit court denied Gall's motion and the Kentucky Court of Appeals affirmed on the grounds that the August 15, 2001 judgment of the federal court demonstrated an intent not to vacate the underlying state conviction. The Kentucky Court of Appeals further noted that Gall's appeal of the August 15, 2001 order never raised the issue of whether the conviction should be vacated, instead focusing solely on the involuntary commitment issue. The Kentucky Supreme Court denied discretionary review on March 12, 2008, whereupon Gall promptly filed a new motion in this court seeking an order vacating the 1978 conviction pursuant to the grant of the writ.

[Record No. 196, p. 2]

In his motion to enforce, Gall argues that although the grant of habeas corpus remedied his wrongful custody in Kentucky, he still suffers from the collateral consequences of the

conviction. Accordingly, he requests that this Court vacate the October 6, 1978, state murder conviction. [Record No. 185]

In response, the Attorney General argues that this Court should not grant Gall's requested relief for the following reasons: (1) this Court lacks jurisdiction (or the issue is moot) since Gall's petition for habeas corpus has already been granted; (2) this is an improper venue since Gall is currently an inmate in Ohio; (3) Gall's pleadings are insufficient because he fails to show how he is prejudiced by the collateral consequences of the conviction; (4) Gall is procedurally barred or has waived his right to bring this claim; and (5) the principles of federalism and justice weigh against this Court's vacating Gall's state court conviction. [Record No. 194]

In his Report and Recommendation, Magistrate Judge Wehrman made findings regarding: (1) Jurisdiction/Venue; (2) Procedural Default; (3) Appropriate Relief; and (4) "Broader Issues of Justice." [Record No. 196] He then recommended that "petitioner's motion to enforce the judgment of the Sixth Circuit and this court's previous grant of writ of habeas corpus be granted, and that the district court enter an order forthwith nullifying the unconstitutional 1978 conviction and requiring the Commonwealth of Kentucky to expunge the same conviction from its records." [*Id.*, p. 18–19] The Attorney General has objected to all the Magistrate's findings and his ultimate recommendation. [Record No. 199] In his reply, Gall also raises several objections regarding the Magistrate Judge's legal conclusions. [Record No. 202]

## II.     STANDARD OF REVIEW

This Court must make a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). Since the

Attorney General objects to all the Magistrate Judge's findings and his ultimate recommendation, the undersigned will review the entire matter *de novo*.

### III.   ANALYSIS – PROCEDURAL ISSUES

#### A.   This Court's Jurisdiction Over the Matter

The Magistrate Judge found that this Court has jurisdiction, because "[u]nder Sixth Circuit case law and generally understood principles of habeas corpus, a court retains jurisdiction to enforce its own prior judgment." [Record No. 196, p. 3] The Attorney General argues that this Court relinquished its jurisdiction, because its judgment was completed when the Commonwealth of Kentucky released Gall from its custody. [Record No. 199, pp. 6–7] The Magistrate Judge and the Attorney General rely on the same opinion to support their opposing conclusions regarding whether this Court has jurisdiction.

In May 2004, the federal district court in the Western District of Kentucky issued a conditional grant of habeas corpus to Carrie Gentry after holding that violations of her Sixth Amendment right to confrontation resulted in an unconstitutional conviction. *Gentry v. Deuth*, 456 F.3d 687, 690–91 (6th Cir. 2006). In January 2005, Gentry returned to district court and filed a motion to enforce the May 2004 judgment, and to have her unconstitutional conviction voided so that she would not be subjected to the collateral consequences faced by convicted felons.[4]  *Id.* at 691. The district court responded by converting the conditional grant of habeas into an absolute grant and nullified Gentry's conviction.  *Id.*  The subsequent appeal to the Sixth Circuit was "essentially predicated on a technical legal issue – whether the district court

---

[4]      *Gentry v. Deuth*, 381 F.Supp.2d 634 (W.D. Ky. July 21, 2005).

possessed jurisdiction over the motion to enforce and the authority to nullify the Commonwealth's conviction. *Id.*

The Sixth Circuit held that the federal district court retained jurisdiction to nullify Gentry's conviction even though she had already been released from prison. *Id.* at 697. In reaching this conclusion, the court noted that, "a federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case," but "when a state meets the terms of the habeas court's condition, the habeas court does not retain any further jurisdiction over the matter." *Id.* at 692 (citations omitted). The court also noted that:

> [T]he law is absolutely clear that the writ [of habeas corpus] releases the successful petitioner from the state's custody, and, as we have discussed above, such release includes relief from the conviction's collateral consequences when it was the conviction itself that was found to be unconstitutional. As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction.

*Id.* at 696 (citations omitted). Essentially, the court held that relief from the collateral consequences of an unconstitutional conviction is implicit in a grant of habeas corpus relief.[5] Since Gentry was still subjected to the collateral consequences of her unconstitutional conviction, the judgment was not complete. Thus, the district court retained jurisdiction.

 Based on the reasoning in *Gentry*, whether a district court actually intended for relief from collateral consequences to be part of its judgment appears to be irrelevant. The Sixth Circuit held that relief from collateral consequences is implicit in a grant of habeas corpus based

---

[5]     *See Id.* at 693–94 (*citing Sibron v. New York*, 392 U.S. 40 (1968); *Carafras v. LavVallee*, 391 U.S. 234 (1968); *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004);  *Green v. Arn*, 839 F.2d 300 (6th Cir. 1988)).

on an unconstitutional conviction.  Thus, a judgment is not fulfilled if, after being released, a petitioner is still subjected to collateral consequences stemming from the unconstitutional conviction.  Since Gall's release from Kentucky custody did not alleviate the effects of the collateral consequences of his conviction, this Court retains jurisdiction over this matter until its judgment is fully enforced.

Additionally, because Gall is still affected by the collateral consequences of his unconstitutional conviction, his motion is not moot.  *See Carafas v. Lavallee*, 391 U.S. 234, 239 (1968) (the expiration of a sentence does not render a  habeas petition moot if the petitioner is still affected by the collateral consequences of the conviction).

## B.    Proper Venue

Gall has been an inmate in the Ohio prison system since his release from Kentucky's custody in November 2001.  Because Gall is currently incarcerated in Ohio, the Attorney General contends that the Eastern District of Kentucky is the improper venue to handle this motion.  [Record No. 199, p. 9–10]  However, because Gall seeks relief from collateral consequences of an unconstitutional Kentucky conviction, and because a habeas grant implicitly includes such relief, the Eastern District of Kentucky remains a proper venue for this action.  *See* 28 U.S.C. § 2241(d) (noting that the Eastern District of Kentucky was the proper jurisdiction to bring the habeas petition in initially).

## C.    Sufficiency of the Pleadings

The Attorney General also argues that Gall's pleadings are insufficient because he has not made any showing that he is prejudiced by the collateral consequences stemming from his Kentucky conviction.  [*Id.*, p. 7–9] The Attorney General contends that although *Gentry* stood

for the proposition that prejudice need not be shown by a preponderance of evidence because of the presumption of collateral consequences, at least a minimal showing is still required.  [*Id.*, p. 8]  The Attorney General claims that the possibility that Gall would be adversely affected by the Kentucky conviction remaining on his record when he is up for parole in 2021 is too remote; therefore, Gall has not demonstrated even a minimal showing of prejudice.  [*Id.*, p. 8–9].  Essentially, the Attorney General argues that there is no showing of any actual injury, and as a result, no case or controversy is presented.

To meet the case-or-controversy requirement, parties must have a personal stake in the outcome of the lawsuit at all stages of the proceedings.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations omitted).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Id.*   While in custody, the case-or-controversy requirement is always satisfied. *Id.*   However, if the petitioner's sentence has expired, "some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequences' of the conviction – must exist if the suit is to be maintained."  *Id.* (citation omitted).

In *Spencer*, the Supreme Court noted that "[i]n recent decades we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." *Id.* at 8 (parentheses are original) *citing Sibron v. New York*, 392 U.S. 40, 55 (1968) ("The Court thus acknowledges the obvious fact of life that most criminal convictions do in fact entail

adverse collateral legal consequences.  The mere 'possibility' that this will be the case is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'").

First, it should be noted that the Sixth Circuit already addressed this issue in its June 13, 2003 opinion:

> [W]hile a substantial argument can be made that the case is moot because Gall was granted habeas corpus relief and has been released from Kentucky's custody, we conclude that collateral consequences still exist, and that a case or controversy exists with respect to whether this court's earlier opinion and judgment were fulfilled.

*Gall*, 69 Fed. Appx. at 253.   Second, the Attorney General's own arguments expressly acknowledge the prejudicial effect of the collateral consequences.  In addressing why the tenets of justice do not require this Court to grant Gall's request relief, the Attorney General asserts that:

> Ultimately, when Gall becomes parole eligible in Ohio, his "risk" will be assessed by a review of his criminal history.  Nullifying this conviction from Gall's record would create an unnecessary risk to the general public (and women in particular).  Justice dictates the circumstances of Gall's life be fully assessed when calculating risk – and nullification of this conviction eliminates such risk.
>
> *   *   *
>
> [T]he Respondent has continued to oppose Gall because of a belief that this action was more than about enforcing the rule of law or concern over Gall's future right to vote or drive a car.  As was confirmed by Gall in his Reply, this is about Gall wanting to get out of prison when he comes up for parole – [an] unfathomable prospect that was acknowledged by the Sixth Circuit when habeas relief was granted.  Therefore, by continuing these efforts, the Respondent has attempted to ensure that Gall's horrible crimes against Lisa Jansen will not go unnoticed when the Ohio Parole Board assesses whether Gall should be paroled from his Ohio prison.
>
> *   *   *

> [T]he Respondent's efforts are part of an ongoing duty to protect society from Gall.  It is because of unfortunate errors in the legal process that Gall's convictions related to crimes against Lisa Jansen were overturned.  Nevertheless, when assessing his future dangerousness/risk to the public, the existence of this case should remain a factor to be utilized in determining whether he is entitled to be released.

[Record No. 199, p. 15–17]

By making these arguments, the Attorney General acknowledges that collateral consequences exist, *and* expressly advocates that these collateral consequences should  have a negative effect on Gall in the future.  Therefore, the Attorney General's earlier argument (i.e., that Gall's pleadings are insufficient because they fail to show any prejudice) is simply illogical.  In short, Gall's pleadings are sufficient to meet the case-and-controversy requirement.

### D.    Procedural Default

In his Report and Recommendation, the Magistrate Judge found that Gall was not procedurally defaulted from bringing his motion to enforce.  [Record No. 196, p. 4–8]   In support of this conclusion, the Magistrate Judge stated that:

> Three factors preclude a finding of procedural default on the facts of this case notwithstanding the passage of eight years following the Sixth Circuit's opinion: 1) the lack of state or federal law concerning the procedure to be followed to nullify or expunge a state court conviction following a federal grant of habeas relief; 2) the timing of the Sixth Circuit's decision in *Gentry* in 2006 during the pendency of Gall's state court proceedings; and 3) petitioner's continual pursuit of a state court remedy followed by a prompt post-*Gentry* pursuit of a remedy in this court.  This is not a case where the petitioner sat on his hands.  After the Kentucky Supreme Court denied discretionary review on March 12, 2008, petitioner's counsel filed the instant motion just one month later.
>
> The lone factor in favor of procedural default is that when Gall first appealed this court's August 15, 2001 judgment, he raised only the issue of the failure [of] Kentucky to mandate involuntary commitment proceedings.  In theory[,] Gall could have challenged this court's failure to include his tendered language "vacating" the underlying conviction at the time, but did not.

-10-

[Record No. 196, p. 6–7]

The Attorney General objects to this finding, contending that "Gall procedurally defaulted this issue when he failed to raise it in his previous appeal of this Court's Judgment (dated August 15, 2001), and also because he waited until April 15, 2008 to raise this issue via the motion to enforce in this Court." [Record No. 199, p. 10] In support of this argument, the Attorney General argues that: (1) the authority to provide relief from collateral consequences of an unconstitutional conviction was not newly available to federal courts after *Gentry* in 2006, but had been established in *Carafas* in 1968; (2) Gall's attorney argued and won *Gentry*, so he should have known to bring this action in federal court instead of spending four years seeking redress in state court; and (3) Gall did not "continually pursue" this action, because he waited 2 ½ years to file any claim even though the claim of error was, or should have been apparent, when the August 15, 2001 judgment did not include Gall's tendered language to vacate his conviction. [Record No. 199, pp. 10–13]

The Attorney General's primary argument is that federal courts' power to provide relief from collateral consequences was not initially established by *Gentry*. Rather, the *Gentry* Court relied on *Carafas*, which reached a similar holding nearly 40 years earlier. [Record No. 199, pp. 10–11] *See Carafas*, 391 U.S. at 237–39 (holding that the habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody, and that the statute's mandate is broad with respect to the relief that may be granted").

Although *Carafas* discusses both collateral consequences of a conviction and the broadness of the relief available under the habeas statute, the Supreme Court did not hold that a federal court could nullify a state conviction to provide relief from the collateral consequences

-11-

of an unconstitutional conviction. The Supreme Court's holdings in *Carafas*, and then in *Sibron*, established that the habeas corpus statute provides relief from both direct and collateral consequences. However, it was not until *Gentry* that authority existed specifically holding that federal court nullification of a state conviction is the appropriate remedy for a habeas petitioner suffering from the collateral consequences of an unconstitutional conviction. *See Gentry*, 456 F.3d at 696–97.

Since the availability of this remedy in federal court had not been determined until *Gentry*, Gall is not faulted for seeking relief in state court prior to *Gentry*. The Magistrate Judge reached the same conclusion:

> [I]n 2001 when Gall appealed the order granting habeas relief, it was not clear that this federal court would be required to expressly nullify the conviction. Given Gall's release from state custody based upon a finding that the underlying conviction was unconstitutional, it was arguably reasonable for Gall to assume that nullification was *implied* (as later held by *Gentry*) and that the conviction would be set aside by the state without additional action on his part. At most, Gall might reasonably have believed that he would be required to pursue expungement through a state court proceeding. When it became clear that the Kentucky conviction would remain unaltered and that collateral consequences would continue to flow form that conviction, Gall sought relief in the state court.
>
> *Gentry* was decided in July 2006 while Gall's appeal of the denial of relief by the state court was still pending. In *Gentry*, the Sixth Circuit affirmed the relief sought by Gall in the case *sub judice* – an order enforcing previously granted habeas relief through nullification of the underlying conviction, to avoid the imposition of collateral consequences upon the (released) prisoner-petitioner by the Commonwealth of Kentucky. Prior to *Gentry*, no case law illuminated the course of remedy to be pursued where a petitioner had been awarded habeas relief and released from imprisonment, but remained subject to collateral consequences due a state's decision to imposed them on the basis of an unconstitutional conviction that remained "on the books." Thus, although a petitioner seeking nullification of his conviction after *Gentry* might be faulted for first pursuing a remedy in state court, on the facts of this case I can find no procedural default.

[Record No. 196, pp. 7–8]

-12-

The Attorney General's second and third objection to the Magistrate's findings also fail. First, it is true that Timothy Arnold, one of Gall's current attorney, successfully argued for the remedy of federal nullification of a state conviction in *Gentry*. However, Arnold was not assigned to Gall's case until this current motion was filed on April 15, 2008.[6] [Record Nos. 184, 187] The fact that different Kentucky Department of Public Advocacy ("KDPA") attorneys represented Gall in state court while Arnold, assigned by the KDPA to represent Gentry, litigated her similar claim in federal court is meaningless. Thus, there is no merit to the Attorney General's argument that if Arnold and the KDPA believed that federal court was the proper forum for a remedy in *Gentry,* then they should not have spent four years pursuing a state court remedy in Gall's case. Second, the Attorney General's claim that Gall waited two and one-half years before filing any claim is incorrect. This Court's August 15, 2001, judgment did not become final until the Sixth Circuit's decision in *Gall v. Scroggy* on June 13, 2003. Gall began pursuing relief from the collateral consequences of the conviction in state court less than a year later. *Gentry* was decided while Gall's claim for relief was still pending before the Kentucky Court of Appeals. Thirty days after denial of relief was finalized in state court, Gall filed this motion. As the Magistrate Judge correctly notes, "[t]his is not a case where the petitioner sat on his hands." [Record No. 196, p. 6]

For the reasons discussed above, the Court adopts the Magistrate's findings and holds that Gall is not procedurally barred from bringing the present motion.

_____

[6]     This Court granted Gall's motion to substitute Timothy Arnold and Jeffrey Sherr as counsel in place of Edward Monahan and Erwin Lewis on April 22, 2008. [Record No. 187] Arnold and Sherr were assigned to Gall's case for federal proceedings by the Kentucky Department of Public Advocacy. [Record No. 184]

## IV.   ANALYSIS – SUBSTANTIVE ISSUES

### A.   The Petitioner is Entitled to Relief from Collateral Consequences

As previously discussed, the Supreme Court held in *Carafas* that the habeas corpus statute authorizes federal courts to relieve the direct and collateral consequences of a unconstitutional conviction when granting a writ of habeas corpus. *Carafas*, 391 U.S. at 239. In his Report and Recommendation, the Magistrate Judge recommends nullifying Gall's state court conviction to relieve Gall from the collateral consequences associated with his unconstitutional conviction. [Record No. 196, pp. 13–19]  The Attorney General opposes this recommendation and argues that the "tenets of justice do not require granting Gall any additional relief."  [Record No. 199, p. 13–17]

The Attorney General's primary objection is that despite its October 30, 2000, judgment instructing this Court to grant Gall's petition for habeas corpus, the Sixth Circuit clearly intended to prevent Gall from getting an opportunity to be released and re-offend.  As the Attorney General notes, "Gall is now hoping to use the Sixth Circuit's opinion, the same opinion that sought to keep him permanently institutionalized, as a tool to facilitate his release."  The Attorney General also argues that Gall would receive no tangible benefits from having this conviction nullified, because he has several other legitimate felony convictions that will also impose collateral consequences on him.  Finally, the Attorney General argues that this Court should consider Gall's factual guilt in determining whether to nullify his conviction.  [Record No. 199, pp. 14–17]  For the reasons discussed below, the Court will adopt the Magistrate Judge's recommendation and nullify Gall's state conviction over the Attorney General's objections.

The Attorney General is correct in asserting that the Sixth Circuit intended to prevent Gall's release into the general public.

> [I]n looking at the trial record, we think that the overwhelming and undisputed evidence of Drs. Chutkow and Toppen was that Gall was not sane at the time he committed the acts in question.  Moreover, the evidence clearly showed that Gall's psychotic condition is permanent, and that he would be extremely dangerous to his fellow citizens if released into free society.  Dr. Noelker testified to Gall's dangerousness in the starkest terms.  He stated that Gall's condition was not curable, and "the best that we can hope to do would be to control his condition."  Outside of an institution, he explained, this is not possible; "we would have no means of knowing how or when he took his medication or what pressures would cause him to be psychotically obsessional."  In an uncontrolled setting, therefore, it was "probable that [Gall] would act again in a similar manner" to the grisly act committed in this case.  It was therefore his "strong recommendation" that Gall "never be allowed to become a free member of the society again."  In 1983, he repeated his diagnosis that Gall would always suffer from a mental disease or defect.  At trial, Dr. Toppen reached the same conclusion, explaining the need for Gall to remain in a highly structured environment, whether that be a mental or penal institution.  A 1991 examination by another doctor confirmed that Gall is permanently dangerous (concluding that Gall's violent propensities "appear to be the result of a brain dysfunction which unleashes, without apparent internal control, violent and aggressive behavior").
>
> With this overwhelming showing of Gall's severe mental illness and his high potential for future dangerousness, we condition the grant of Gall's habeas petition on the state's granting him an involuntary hospitalization proceeding. . . . *[W]e can only hope that the Commonwealth will note the overwhelming evidence that this man is severely mentally ill and highly dangerous and commit him indefinitely on that basis.*

*Gall*, 231 F.3d at 336 (internal citations omitted) (emphasis added).

On remand to this Court, a judgment was entered directing Kentucky to release Gall from its custody within 90 days, but granted the state an additional 30 days custody if it elected to initiate civil commitment proceedings as suggested by the Sixth Circuit.  *Gall*, 69 Fed. Appx.

-15-

at 252.  Instead of seeking involuntary[7] commitment of Gall within the prescribed time period,

Gall  was extradited to Ohio to serve time for rape, attempted rape, and aggravated robbery.  *Id.*

at 253.  Gall appealed his release to Ohio, but the Sixth Circuit held that Kentucky was not

required to provide him an involuntary commitment proceeding rather than release him.  *Id.* at

253.

The Attorney General argues that this Court should not grant Gall's relief, because the

Ohio Parole Board should be able to use the Kentucky conviction in determining whether to

grant Gall's parole.  This argument is unpersuasive.  This Court (per Judge Bertelsman) provided

Kentucky with the opportunity to maintain control of Gall when it granted his habeas petition

– involuntary commitment.  However, Kentucky rejected this opportunity and relinquished

custody of Gall to the Ohio Department of Corrections.  As a result, Kentucky gave up the

interest it had in controlling Gall's confinement when it chose to hand him over to Ohio rather

than civilly commit him in the Commonwealth.  Whether Gall is granted parole in 2021 or at

some later date is a matter for the Ohio Adult Parole Authority to decide. *See* OHIO REV. CODE

§ 2967.02.

The Attorney General also argues that Gall would not receive a tangible benefit if his

requested relief was granted, because he would still be burdened by the collateral consequences

of other legitimate felony convictions.  Essentially, the argument is that Gall's claim is moot,

because a favorable judgment is unlikely to provide tangible relief.  Whether a petitioner's

multiple offender status renders relief from the collateral consequences of one conviction moot

---

[7]       Gall *wanted* to be committed in Kentucky rather than incarcerated in Ohio.  However, the proceeding
would still have been "involuntary" in the sense that he would have been committed by the state and,
therefore, would be unable to secure his own release from the mental institution.

has not been addressed by the Sixth Circuit as far as the undersigned can determine.  However, the Court agrees with the Magistrate Judge's analysis and holds that Gall's multiple offender status does not render his motion moot.[8]

Finally, Gall's factual guilt cannot be taken into consideration by this Court in its determination of whether to nullify the conviction.  This Court does not doubt either the Sixth Circuit's or the Attorney General's contention that Gall is factually guilty of murdering Lisa Jansen.  However, the Attorney General is aware that a person is not legally guilty unless this is proven to a jury beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358 (1970).  The Sixth Circuit determined that Gall's conviction was unconstitutional and that double jeopardy precluded Kentucky from ever legally convicting Gall of her murder.  Therefore, this Court must consider only Gall's current legal status.  Because Kentucky did not prove Gall guilty beyond a reasonable doubt with in the confines of the Constitution, the undersigned cannot consider whether he is factually guilty when making the determination of whether to grant habeas relief.

Based upon the Sixth Circuit's holding that Gall's conviction was unconstitutional, Kentucky cannot continue to impose collateral consequences on Gall stemming from that unconstitutional conviction.  Accordingly, the Court adopts the Magistrate Judge's conclusion that relief should be granted.

---

[8]     *See Sibron*, 392 U.S. at 56 (finding "no relevance in the fact that Sibron is a multiple offender" based in part upon the inability to predict whether other convictions could be set aside in the future); *Harrison v. Indiana*, 597 F.2d 115, 118 (7th Cir. 1979) (noting that the Supreme Court has clearly held that "a petitioner's status as a multiple offender does not so affect the collateral consequences as to render moot his attack on any one conviction"; *Murray v. Wainwright*, 450 F.2d 465, 468 (5th Cir. 1971) (multiple offender status is irrelevant to mootness determination); *Velez v. New York*, 941 F. Supp. 300, 308–09 (E.D.N.Y. 1996) (same). *Cf. Malloy v. Purvis*, 681 F.2d 736, 739 (11th Cir. 1982) (holding that a claim for relief from collateral consequences is moot where petitioner is a multiple offender).

### B.    Appropriate Manner of Relief

Gall seeks an order "finding the October 6, 1978 judgment of the Boone Circuit Court to be void, and directing that it be *vacated*." [Record No. 185, p. 8] (emphasis added).   As the Magistrate Judge correctly concludes, a federal district does not have the authority to *vacate* a state conviction.  [Record No. 196, p. 9]  However, the Court has the authority, and may be required, to *nullify* and direct *expungement* of a state court conviction after a habeas writ is granted.[9]  [Record No. 196, pp. 9–13]

In denying Gall's requested relief in state court, the Kentucky Court of Appeals found it was "highly significant for the purposes of the present appeal that the district court chose **not** to include [Gall's tendered language that his conviction be vacated] in its [August 15, 2001] order granting habeas relief to Gall."  *See Gall v. Commonwealth*, 2007 WL 1575303, at *2 (Ky. App. 2007) (emphasis original).   The Kentucky Court of Appeals held that *Gentry* stood for the proposition that federal district courts had the authority to vacate a state conviction, and that this Court's  failure to include Gall's tendered language amounted to purposeful choice not to vacate his state conviction.  *See Gall*, 2007 WL 1575303, at *3.

---

[9]      The relevant case law distinguishes between the *nullification* and/or *expungment* of a state court conviction by a federal district court, and the *vacatur* or *reversal* of such a conviction.  Therefore, it is important to define the terms:

    1)      Nullification – "The act of making something void" or "The state or condition of being void"
    2)      Expungment – "The removal of a conviction . . . from a person's criminal record."
    3)      Vacatur – "The act of annulling or setting aside" or "[a] rule or order by which a proceeding is vacated."
    4)      Reversal – "An appellate court's overturning of a lower court's decision."

BLACK'S LAW DICTIONARY (8th ed. 2004).

*Gentry* did not hold that a federal district court has the authority to *vacate* a state criminal conviction. Rather, the court held that the district court acted within its constitutional authority when it *nullified* Gentry's unconstitutional state conviction. In so holding, the court noted:

> [T]he law is absolutely clear that the writ releases the successful petitioner from the state's custody, and, as we have discussed above, such release includes relief from the conviction's collateral consequences when it was the conviction itself that was found to be unconstitutional. As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively *requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction*.

*Gentry*, 456 F.3d at 697 (emphasis added). Thus, *Gentry* makes clear that habeas relief from an unconstitutional conviction implies nullification and expungement of the conviction, and that a federal district court has the authority to later make explicit what is implicit in its grant of habeas relief. Additionally, the *Gentry* Court clarified its holding by noting that:

> In so holding, however, we note that the fact that the writ *nullifies* the criminal conviction does not necessarily *reverse* that conviction, for the writ does not itself generally preclude the Commonwealth from retrying the petitioner if it can otherwise do so lawfully. Nullification is thus akin to a non-prejudicial dismissal.

*Id.* at 697 (emphasis original) (citations omitted). Since double jeopardy barred re-prosecution of Gall for murder, his grant of habeas corpus implied nullification, which therefore, was akin to a dismissal with prejudice in this case.

Gall's motion requests vacatur, not nullification. Under Kentucky Law, upon motion a court may relieve a party from its final judgment if the judgment "is void, or has been satisfied, released, or discharged, or the prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." KY. R. CIV. P. 60.02(e) This Court agrees with the Magistrate Judge that since

-19-

nullification renders a conviction void, Gall will receive the same relief from nullification that he would if this Court had the authority to vacate the sentence.

Based on the Magistrate Judge's analysis of *Gentry*, he recommended that this Court should enter an order nullifying and directing expungement of the underlying 1978 conviction. [Record No. 196, p. 12]  After a thorough review *de novo*, this Court adopts the Magistrate Judge's recommendation to nullify the conviction and to direct that the conviction be expunged from Gall's record.

## V.    CONCLUSION

Based upon the foregoing analysis, it is hereby **ORDERED** as follows:

(1)    The Report and Recommendation of the Magistrate Judge filed October 15, 2008 [Record No. 196] is **ADOPTED** and **INCORPORATED** herein by reference.

(2)    The objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

(3)    Petitioner Eugene William Gall, Jr.'s motion to enforce the Sixth Circuit's October 30, 2000 judgment [Record No. 185] is **GRANTED**;

(4)    Petitioner Eugene William Gall, Jr.'s Kentucky conviction for the murder of Lisa Jansen is **NULLIFIED**; and

(5)    The Commonwealth of Kentucky is directed to **EXPUNGE** the above-referenced conviction from Eugene William Gall, Jr.'s criminal record.

This 4th day of December, 2008.

-20-



Signed By:

*Danny C. Reeves*

United States District Judge